413 So.2d 959 (1982)
Troy Hickman PRESTRIDGE, Sr., Plaintiff-Appellee,
v.
COMMERCIAL UNION ASSURANCE COMPANIES, et al., Defendants-Appellants.
No. 8699.
Court of Appeal of Louisiana, Third Circuit.
April 14, 1982.
Rehearing Denied June 1, 1982.
*960 Stafford, Stewart & Potter, Larry A. Stewart, Trimble, Randow, Percy, Smith, Wilson & Foote, James T. Trimble, Jr., Alexandria, for defendants-appellants.
Rivers & Willson, Larry W. Rivers, J. Marc Lampert, Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, FORET and LABORDE, JJ.
LABORDE, Judge.
This personal injury action arises out of a boat launching accident. Troy Prestridge, Sr. filed this suit for damages against his son, Troy Prestridge, Jr., and his son's automobile liability carrier, Employers Fire Insurance Company, and his son's boat insurer, Trinity Universal Insurance Company. The matter was tried to a jury which found that Troy, Jr. was negligent and that Troy, Sr. was not contributorily negligent. The jury awarded plaintiff $25,000 in general damages and $600 in special damages. Defendants suspensively appeal the judgment. We affirm.
The issues on appeal concern Troy, Jr.'s negligence, Troy, Sr.'s contributory negligence and the excessiveness of the general damage award.
On Friday, April 28, 1978, Troy Jr. picked up his father, Troy, Sr., and they traveled from Alexandria to Troy, Jr.'s camp on Toledo Bend Reservoir where they planned to spend the weekend. Troy, Jr. drove them in his pick-up truck, pulling behind it his boat and trailer. They reached the camp sometime between 5:30-6:30 P.M. unloaded their weekend supplies, gathered their fishing gear and proceeded on to a nearby boat launch. Troy, Jr. backed the trailer and boat down the ramp and into the water. He freed the boat from the trailer and then handed the bow line of the boat to his father. Troy, Sr. held the bow line while his son drove his pick-up truck and trailer up the launching ramp. As Troy, Jr. was proceeding up the ramp, the bow line his father was holding became entangled in the guard rail of the trailer pulling Troy, Sr. into the guard rails which ultimately resulted in the amputation of the tips of two of Troy, Sr.'s fingers.
Defendants contend the jury erred in finding Troy, Jr. negligent, or alternatively, in failing to find Troy, Sr. contributorily negligent and in any event, it erred in awarding excessive general damages.
In regard to the first two issues, once the applicable standards of care are established, negligence and contributory negligence are questions of fact to be determined by the judge or jury. Steele v. St. Paul Fire & Marine Ins. Co., 371 So.2d 843 (La.App. 3rd Cir. 1979), writ denied, 374 So.2d 658 (La.1979); Cooksey v. Central Louisiana Electric Co., Inc., 279 So.2d 242 (La.App. 3rd Cir. 1973). In the absence of manifest error, a reviewing court should not disturb these factual determinations. In order to find manifest error, the record must support the conclusion that the factual determinations were clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
We have reviewed the entire record and we find that there is evidence presented that is supportive of the jury's conclusion that Troy, Jr. was negligent and that Troy, Sr. was free from contributory negligence.
Defendants argue that there was nothing unusual about the procedure used in launching the boat, that the father and son had used the same procedure numerous times without accident and that if anything, Troy, Sr. was responsible for keeping the bow line from becoming entangled. However, several things appear in the record that contradict, explain or qualify these allegations of defendants. For example, both Troy, Sr. and his son testified that upon arriving at the boat launch, they observed a large log floating in the area where the boat was to *961 be launched. They were unable to move the log and had to launch the boat with it in the way. There is some evidence indicating that the trailer wheel rolled over the log complicating the launching procedure and perhaps even causing the bow line to become entangled.
The evidence also shows that even though Troy, Sr. and Troy, Jr. had launched boats together before, this was the first time Troy, Sr. had assisted his son in launching this particular boat. Also unusual was that on the date of the accident, even though Troy, Sr. and Troy, Jr. used a launching procedure similar to ones they had used in the past, they exchanged their customary roles in this procedure. Whereas Troy, Sr. always drove the truck up the ramp and Troy, Jr. always held the bow line, on this particular day, Troy, Jr. instructed his father to hold the bow line while he drove the truck up the steep ramp because the clutch on the truck was slipping. Both Troy, Jr. and his father testified that in order to drive the truck with its slipping clutch up the steep ramp, Troy, Jr. had to race the motor. In driving the truck up the ramp, Troy, Jr. looked back to make sure his father was clear of the trailer. Once he determined this, he looked forward and continued up the ramp rapidly without again looking back to make sure he could pull the trailer out safely. In the meantime, while Troy, Jr. was proceeding up the ramp with the motor racing and without looking back, Troy, Sr. encountered some problems with the bow line which he testified was his responsibility to keep from becoming entangled. He explained that he was standing near the trailer, holding the bow line and watching for problems. As soon as the bow line became entangled in the trailer he yelled to his son and tried to flip the bow line clear. His son did not hear him yell, possibly due to the noise of the racing motor, and continued up the ramp. Before Troy, Sr. could take any other action he had been pulled into the trailer guides resulting in the amputation of the tips of two of his fingers.
These are some of the factors the jury could have relied upon in reaching its conclusions that Troy, Sr. had exercised ordinary care and prudence under the circumstances while Troy, Jr. had not. Even though another jury might have found otherwise, the jury chosen to try this case did not. The standard for changing a finding of fact by a jury is clear error and that standard has not been shown. Soileau v. South Central Bell Telephone Company, 406 So.2d 182 (La.1981).
The final issue concerns quantum, in particular, the general damages portion of the jury award. Here again much discretion is left to the jury in assessing damages and such discretion should not be disturbed on appellate review in the absence of abuse. Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976).
The jury awarded $25,000 in general damages. In view of plaintiff's injury, we conclude that the jury did not abuse its much discretion. The accident resulted in the immediate amputation of the distal joint of the long finger of the left hand and amputation of the ring finger down to the middle joint of the same hand. Plaintiff described the immediate pain as feeling like he had been burned with a blowtorch. He was taken to a nearby hospital, received several pain shots and was transferred to Alexandria where he was treated by Dr. P.M. Davis, Jr., a local orthopedic surgeon. Dr. Davis testified to the above by videotape deposition at trial.
Plaintiff testified that following the accident, he remained in almost constant pain for about three months in spite of the pain medications prescribed for him. After this three month period, he continued to suffer pain to a lesser degree and on an intermittent basis continuing through the date of trial.
Before the accident, plaintiff had no problems with or deformities of his left hand. Now he has problems with his hand that have forced him to limit his fishing activities which he enjoyed and have also affected his ability to do normal chores around the house as well as his ability to *962 repair small machinery which he did to help supplement his retirement income. Plaintiff's testimony was completely corroborated by his wife's testimony. Additionally, plaintiff is aware of the disfiguring nature of his injury and has suffered mental anguish as a result of his deformity, all factors which the jury had before it in making its award.
Accordingly, the jury verdict is affirmed in all respects. Appellants, Employers Fire Insurance Company and Trinity Universal Insurance Company, are cast for all costs of this appeal.
AFFIRMED.
DOMENGEAUX, J., concurs and assigns reasons.
FORET, J., dissents with reasons.
DOMENGEAUX, Judge, concurring.
I believe that the jury was wrong in not finding negligence on the part of the plaintiff father, however, I cannot say that it was clearly wrong, and consequently I am bound by the rules of appellate review set out by our Supreme Court in numerous cases, including Canter v. Koehring Company and Arceneaux v. Domingue, both of which are so well known that citations are not necessary.
I reluctantly agree with the majority opinion and consequently concur therein.
FORET, Judge, dissenting.
I respectfully dissent from the decision arrived at by my learned brethren. Try as I may, I cannot strain a judgment for the plaintiff from the facts of this case. I find no negligence of plaintiff's son that was a cause-in-fact of the accident involved. As I see it, the sole negligence involved is that of the plaintiff himself. He permitted the happening of exactly what he was supposed to prevent from happening, i.e., preventing the bowline from becoming entangled in the trailer. As a hapless consequence, two of his fingers were amputated. It was his sole responsibility to keep the bowline from becoming tangled, and he failed in that responsibility. The least he could have done was to let go of the line when he saw that it was becoming entangled, and this he also failed to do.
Even assuming, arguendo, that plaintiff's son was negligent, at the very least, the plaintiff-father was contributorily negligent and should be barred from recovery.