629 So.2d 1354 (1993)
Karen DENT, individually and administratrix of her Deceased Minor Child
v.
Dr. Joseph A. PERKINS, et al.
No. 93-CA-0405.
Court of Appeal of Louisiana, Fourth Circuit.
December 16, 1993.
*1355 Joseph W. Thomas, New Orleans, for plaintiff/appellant.
Rodney J. Lacoste, Jr., Stassi and Griffith, Metairie, for defendant/appellant.
CIACCIO and WALTZER, JJ., and GULOTTA, J. Pro Tem.
JAMES C. GULOTTA, Judge Pro Tem.
The issues in this medical malpractice case are causation and quantum. In an earlier suit before this Court[1] in a matter involving the same parties, we found the following facts:
"In January 1981 plaintiff Karen Dent discovered she was pregnant and began prenatal treatment with Dr. Joseph Perkins. On June 26, 1981 she notified Dr. Perkins' office that she was experiencing labor pains and was instructed to go to the hospital. Plaintiff arrived at St. Claude General Hospital at approximately 11:00 a.m., and after examination by an obstetrical nurse, was found to be in labor.
The nurse, Jacqueline Patrick, notified Dr. Perkins of plaintiff's condition by telephone at approximately 11:45 a.m. Dr. Perkins was off-call beginning at 12:00 noon on June 26, 1981, and his partner, Dr. Odell Dean, was scheduled to attend to his patients. There was no available room for Ms. Dent in the obstetrical section of the hospital and the record indicates the patient was admitted to a non-obstetrical unit on the third floor of the hospital at approximately *1356 2:30 p.m. At 3:40 p.m. Karen Dent delivered a baby girl with the aid of an obstetrical nurse. No physician was present at the time of delivery. After delivery, the infant was transferred to the intensive care unit at Southern Baptist Hospital and was listed in critical condition. The baby was pronounced dead at 3:40 a.m. on June 28, 1981."
Based on credibility we concluded that Dr. Perkins acted below the required standard of care and concluded the jury properly found negligence on his part. However, we remanded the matter to the trial court to determine the "causation" question. The jury apportioned responsibility to the extent of 35% on the part of Dr. Perkins and 65% on the part of St. Claude General Hospital. The jury awarded plaintiff $300,000.00 on her own behalf and $100,000.00 for damages suffered by plaintiff's deceased child.
In a corrected judgment, based on the jury's finding, the trial judge, after considering settlement of outstanding claims,[2] held the Louisiana Patient's Compensation Fund liable to plaintiff in the amount of $40,000.00 together with legal interest from the date the claim was filed with the office of the Commissioner of Insurance.
The Fund, appealing, claims the jury erred in apportioning fault to Dr. Perkins; and if he was in fact negligent, the superseding and intervening negligence of the nurses and the hospital staff exonerated Dr. Perkins from liability. The Fund also argues that the damages awarded by the jury are excessive and not supported by the evidence.
Plaintiff[3], cross appealing, claims the trial judge erred in amending the judgment and further claims that the award against the Fund should be in the amount of $400,000.00, "plus legal interest from the date the administrative claim was filed, with a credit of $300,000.00", netting to plaintiff $100,000.00 plus interest.

CAUSATION
In a medical malpractice claim against a physician, a plaintiff carries a two-fold burden of proof. The plaintiff must establish first by a preponderance of the evidence that the doctor's treatment fell below the ordinary standard of care required of physicians in his or her medical specialty, and second that a causal relationship be established between the alleged negligent treatment and the injury sustained. L.S.A.-R.S. 9:2794; Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991); Smith v. State through DHHR, 523 So.2d 815, 819 (La.1988). Resolution of each of these inquiries are determinations of fact which will not be reversed on appeal absent manifest error. Housley v. Cerise, 579 So.2d 973 (La.1991).
In Dent v. Perkins, supra, this Court determined that Dr. Perkins acted negligently in failing to limit the plaintiff's stay in a non-obstetrical unit to fifteen minutes and in failing to advise Nurse Jacqueline Patrick that he was going off-call and that Dr. Odell Dean would be attending to his patients. The remaining question before us is whether Dr. Perkins' negligent acts and omissions were a cause in fact of plaintiff's damages and suffering and the death of plaintiff's infant child.
Negligence is actionable only where there exists both a cause in fact and a legal cause of the injury. Legal cause requires a proximate relation between the actions of a defendant and the harm which occurs, and such relation must be substantial in character. Sinitiere v. Lavergne, 391 So.2d 821 (La.1980); Sutton v. Duplessis, 584 So.2d 362 (La.App. 4th Cir.1991). A defendant's conduct is considered to be a cause in fact of harm to another if but for his conduct the harm would not have occurred, or if his conduct is a substantial factor in bringing about the harm. There can be more than one cause in fact of an accident as long as each cause bears a proximate relation to the *1357 harm which occurred and is substantial in nature. Nix v. Brasly, 489 So.2d 1038 (La. App. 1st Cir.1986).
The jury in our case found that the negligence of both Dr. Perkins and St. Claude General Hospital, through its nurses, was the proximate cause of the child's death. The jury's conclusions are clearly supported by the record.
Dr. Ernest Cherrie, plaintiff's expert, stated that had plaintiff been in the labor and delivery unit of the hospital, the baby would have survived. There was difficulty in the birth as it was a face presentation. Further, the nurses' notes indicated that the child was trapped in the birth canal for fifteen minutes. According to Dr. Cherrie, the child ultimately died because there was no attending obstetrician. Dr. Cherrie was of the opinion that had plaintiff been placed in the obstetrical unit, both she and the infant would have been monitored. He stated also that normally a face presentation can be corrected and the infant delivered without further complications.
Dr. Charles Frazier testified on behalf of the defendant. Dr. Frazier was a member of the medical review panel which reviewed plaintiff's claim against Dr. Perkins. Dr. Frazier stated that the medical review panel found no evidence of malpractice on the part of Dr. Perkins. Dr. Frazier concluded that it was the nurses at St. Claude General Hospital, in particular Nurse Patrick, who was negligent in the treatment and care of the plaintiff and her unborn child.
Kathleen Martin, an expert in obstetric nursing, testified that the St. Claude nurses did not assess plaintiff's condition adequately and did not notify the physician when it was appropriate. She pointed out further that the nurses' notes indicated that no physician was called until after the child was born. The infant was delivered by an obstetrical nurse.
Based on the evidence we cannot say the jury erred in placing responsibility on Dr. Perkins and the hospital nurses and staff. We reject defendant's claim that the negligence of the hospital nurses and staff was an intervening and superseding cause of the infant's death. The jury found Dr. Perkins thirty-five percent at fault and St. Claude General Hospital sixty-five percent at fault. The findings are clearly supported by the record. While Dr. Perkins was negligent in placing plaintiff on a non-obstetrical unit for an unlimited period of time, the nurses were negligent in their observation and care of the plaintiff. However, this negligence did not supersede the doctor's negligence. It is indeed true that the nurses failed to adequately observe and monitor plaintiff. It is true also that Dent was left in the emergency room from 11:45 a.m., when she was first admitted to the hospital, until 2:30 p.m. when she was finally brought to the non-obstetrical unit of the hospital. Once plaintiff was brought to this unit, the nurses on several occasions called the labor and delivery unit asking for an obstetrical nurse to respond to plaintiff's complaints. None of the obstetrical nurses responded to these requests. When it appeared that plaintiff was about to deliver, an obstetrical nurse assisted in the delivery. No physician was present at the child's birth. Plaintiff's expert testified that had the plaintiff been in the labor and delivery unit where a physician would have been present during delivery, the child would not have died.
We conclude from the evidence that the combined negligence of Dr. Perkins and the hospital nurses and staff was the cause of plaintiff's suffering and injury and the infant's suffering and death. Despite the negligence of the nurses and staff of the hospital, the record clearly supports the conclusion that, but for the negligence of Dr. Perkins resulting in the absence of a physician at the time of delivery, a strong probability exists that the child would have survived.

QUANTUM
Defendant argues that the evidence does not support the amount of the jury award in the sum of $300,000.00 for plaintiff's own pain and suffering and $100,000.00 for the child's pain and suffering. Plaintiff's award is predicated on the suffering and lack of care sustained as a result of the absence of an obstetrician during the distress period of her labor as well as the absence of obstetrical nurses. *1358 Also, an integral part of the award was based upon plaintiff's anxiety and suffering resulting from the child's death.
According to the testimony of plaintiff, plaintiff's mother and plaintiff's sister, Dent agonized over the loss of the infant child and became depressed. Plaintiff further testified that she was happy and excited about her pregnancy. According to plaintiff immediately after the child's birth, she became anxious because the child was taken away and because she was not allowed to hold the child.
After the infant had been transferred to Southern Baptist Hospital, Rosemary Smith, the child's paternal grandmother went to see the child. She stated the baby was in critical condition and did not appear to be conscious. The baby was not crying and there was no movement.
Before an appellate court can disturb a jury award, there must be a finding of an abuse of the jury's "much" discretion. Only after finding that the jury has abused its discretion can the appellate court consider other cases to modify the award. Coco v. Winston Industries, Inc., 341 So.2d 332 (La. 1976). The reviewing court must look first, not to prior awards, but to the individual circumstances of each case. Reck v. Stevens, 373 So.2d 498 (La.1979). Prior awards may serve as an aid in determining excessiveness only where, on an articulated basis, the present award is shown to be greatly disproportionate to past awards for similar injuries. Reck.
Considering the jurisprudence together with the evidence in the instant case, we find that the jury abused its discretion in the amount of the awards to plaintiff. Having so concluded, we look to other cases together with the facts in the instant case to reduce the amount (if excessive) to its highest reasonable amount or to increase the amount (if inadequate) to the lowest reasonable amount. Coco, supra.
Our courts have been unwilling to award a parent in a wrongful death case more than $150,000.00. See Martin v. East Jefferson General Hospital, 582 So.2d 1272 (La.1991); Bourne v. Seventh Ward General Hosp. 546 So.2d 197 (La.App. 1st Cir.1989); Achy v. Aetna Casualty and Surety Co., 499 So.2d 262 (La.App. 1st Cir.1986). writ denied, 503 So.2d 16 (La.1987); Johnson v. Georgia Casualty and Surety Co., 488 So.2d 1306 (La. App. 3rd Cir.1986), writ denied, 493 So.2d 1223 (La.1986); Lang v. Prince, 447 So.2d 1112 (La.App. 1st Cir.1984), writ denied, 450 So.2d 1309, 1311 (La.1984).
In Calloway v. City of New Orleans, 524 So.2d 182 (La.App. 4th Cir.1988), writ denied, 530 So.2d 84 (La.1988), the trial court likewise awarded that plaintiff $150,000.00 in damages. We reduced that award to $30,000.00. Unlike our case, in Calloway, the mother refused to seek prenatal care. In addition, the mother reluctantly saw the child only once. However similar to our case, the child in Calloway lived only thirty-six hours. The Dent child also lived approximately the same length of time. While the facts of the Calloway case are distinguishable from the facts of the instant case in relation to the emotional attachment to the infant, there is similarity in that the infant in Calloway and the child in our case remained alive for a short period of time.
Considering the circumstances in the instant case, we conclude the award to plaintiff be reduced to the amount of $150,000.00, the highest reasonable amount.
We likewise conclude the jury abused its "much" discretion in awarding plaintiff $100,000.00 for the suffering sustained by the infant. Evidence was lacking to support the fact that the infant consciously suffered prolonged pain. The only significant evidence was the testimony of the mother of the child's father who stated that when she visited the child at Southern Baptist Hospital the infant did not appear to be conscious. The child was not crying and there was no movement. Based on a failure to establish an evidentiary basis to support prolonged or extended suffering in the infant, we are compelled to reduce the award to $50,000.00. This is not to say that this Court does not feel compassion and is unmindful of plaintiff's suffering and anxiety and of the child's suffering and death. However, our review of the jurisprudence leads us to conclude *1359 that the jury award requires a substantial reduction.

AMENDED JUDGMENT
The trial court determined that because Dr. Perkins was found to be thirty-five percent at fault, he was responsible to the extent of $140,000.00 of the total $400,000.00 award. He then concluded the Fund was responsible to the extent of $40,000.00. The $40,000.00 represents the actual amount for which the Louisiana Patient's Compensation Fund is liable after a credit of $100,000.00. The Louisiana Patient's Compensation Fund does not become liable for a qualified health care provider's negligence until the provider and/or insurer has paid the statutory maximum of $100,000.00. See R.S. 40:1299.42 D(5).
However, because of the reduction to plaintiff by this Court in her award to a total of $200,000.00[4], we conclude the Patient's Fund is not monetarily responsible to plaintiff. Dr. Perkins is responsible for 35% of $200,000.00 or $70,000.00, which amount is less than the statutory amount of $100,000.00 above which the liability of the Louisiana Patient's Compensation Fund is activated.
Accordingly, we affirm that part of the judgment relating to causation; we amend that part of the judgment relating to quantum. We set aside the judgment in favor of plaintiff and against the Louisiana Patient's Compensation Fund.
AFFIRMED IN PART, AMENDED IN PART JUDGMENT SET ASIDE.
NOTES
[1] Dent v. Perkins, 598 So.2d 1101 (La.App. 4th Cir.1992).
[2] The claim against St. Claude General Hospital was settled for the sum of $200,000.00 and the claim against Dr. Perkins and his insurer was settled for $50,000.00, with reservation of plaintiff's right to seek excess damages from the Louisiana Patient's Compensation Fund.
[3] During the pendency of the appeal, the plaintiff Karen Dent died. Plaintiff's mother, as administratrix of plaintiff's estate, was substituted as plaintiff.
[4] $150,000.00 for damages suffered by plaintiff and $50,000.00 damages suffered by the deceased child.